# Lucas's Appeal.

1. On an intestate's death judgments were entered against one of his heirs,
the land was sold by the administrators in partition, and they made a pay-
ment to the same heir on account of his share; in a distribution of the fund
the heir's share was to be paid to his judgment-creditors in preference to the
administrators.

2. The administrators were simply the officers of the court to make the
sale and receive the proceeds, of which they were merely the custodians,
subject to the order of the court.

3. The 49th section of the Act of March 29th 1832, providing for an auditor
to ascertain liens, is permissive. Its object is to protect encumbrances on the
interests of heirs in real estate, and it was the duty of the administrators to
apply for such an auditor.

4. In all cases within the 49th section, the executor or administrator should
apply for an auditor for the purposes specified in it.

APPEAL from the decree of the Orphans' Court of *Greene
county* in the distribution of the estate of Thomas Lucas, Sr.,
deceased.

The decedent died on the 19th of February 1861, seised and
possessed of real and personal estate, and leaving twelve children,
of whom Swan Lucas was one. Administration of his estate
was granted to Thomas Lucas and Charles Lucas. Immediately
on the death of the decedent, William Kincaid and others, credit-
ors of Swan Lucas, entered judgments against him.

On the 18th of September 1861, an inquisition in partition on
the real estate was confirmed, and the heirs having refused to
take it at the valuation, the administrators were ordered to sell

it, which they did, and their report of the sale was confirmed March 18th 1862. An auditor was appointed on the 28th of March to distribute the fund arising from the sale. On the 11th of April 1862, Swan Lucas gave to the administrators a receipt for $428.20, " on account of his distributive share in the personal and real estate of his deceased father," this sum being to reimburse them for money they had paid· for Swan as his sureties. The auditor made a report, which, on exceptions, was recommitted.

On the 15th of June 1864, the account of the administrators was confirmed, and R. W. Downey, Esq., was afterwards appointed auditor on Swan Lucas's share.

The auditor reported that Swan was indebted to his father's estate to an extent which absorbed all his share of the personal estate, and so much of his share of the real estate as to leave due him a balance of $641.49. The auditor, after stating the facts, reported :—

" There are three claimants for this fund, Thomas and Charles Lucas, administrators of Thomas Lucas, deceased, on the ground that they were sureties for Swan Lucas to the amount of $428.20, and that they received from the said Swan Lucas a receipt on the 11th day of April, A. D. 1862, for $428.20, on account of his distributive share in the personal and real estate of his deceased father. If Swan Lucas, however, had the control of this fund, the testimony does not disclose that he appropriated it before that date, at which date he gave the receipt aforesaid. But it is contended that, as no application had been made for an auditor to ascertain liens, &c., as is provided by the Act of 29th of February 1832, § 49, the administrators had the right to apply the fund to those primâ facie entitled, and if such payment was made, that it was a good and valid payment or disbursement of the balance due Swan Lucas, out of his father's real estate. On examination of this section, your auditor is of the opinion that it is not compulsory but permissive. That an executor or administrator might invoke its provisions to protect himself against a mispayment, or secure to him the benefit of all the facts, a full hearing and an impartial decision. The section does not authorize the auditor to *create or declare* liens, but simply to *ascertain* them, and when ascertained the court may order the amount of money that may be payable to any of the parties against whom *liens existed,* to be paid into court, which has power to distribute it as it would have in the case of a sheriff's or coroner's sale. Besides, it appears from an inspection of the above receipt and the judgments claiming the ·fund, that the judgments are prior in point of time to the receipt. It may also be observed that the receipt was a personal matter of the said Thomas and Charles Lucas, and in which the estate of Thomas Lucas, Sr., was in no wise interested. The auditor, therefore, declines to

[Lucas's Appeal.]

appropriate the fund or any part thereof to that claim, but appropriates it to such judgments as were entered against Swan Lucas after his father's death according to their priority, which your auditor finds and appropriates as follows:"

He then details the judgments and his appropriation of the fund to them.

" In relation to the attachments which were served on the administrators to attach the interest of Swan Lucas in his father's estate, your auditor is of the opinion that as they are subsequent in date to the judgments to which the money has been applied, they could have no claim on the fund as against prior judgment-creditors."

The court confirmed the report, and upon appeal by Thomas Lucas and Charles Lucas, the decree of confirmation was assigned for error.

*A. A. Purman,* for appellants, cited Ebbs *v.* Commonwealth, 1 Jones 374; Acts of March 29th 1832, §§ 37, 42, 49, Purd. 294, 297, 299, Pamph. L. 201, 203, 206; March 21st 1772; April 4th 1798; March 26th and 29th 1827; March 23d 1829.

*Wyly* and *Buchanan,* for appellees, cited Act of 29th March 1832, § 49; 6 Harris 199.

The opinion of the court was delivered, January 7th 1867, by

READ, J.—Thomas Lucas died intestate on the 19th February 1861, leaving some personal estate and considerable real estate, and twelve children, one of whom, Swan Lucas, was indebted to his father.   Letters of administration were granted to two of the sons, Thomas and Charles, who are the present appellants.

Proceedings were commenced in the Orphans' Court of Greene county for a partition of the real estate, which was sold by the administrators under a decree of the court, and on the 18th March 1862 they reported the sale of the several purparts for $15,952.50, payable in three annual instalments, with interest, the first of which was payable on the 1st March 1862, the second on the 1st March 1863, and the last on the 1st March 1864.   On the same day the court confirmed the sale, and on the 28th March, ten days afterwards, the court appointed an auditor to distribute the fund, and on the 6th October the court confirmed his report, except as to Swan Lucas's share, the same being excepted to. On the 19th December the report was recommitted to the auditor to report upon the facts and upon the exceptions filed, and here these proceedings seem to have stopped.

On the 15th June 1864, the administrators filed their account of the personal estate of the deceased.   On the 20th March 1865

R. W. Downey, Esq., was appointed auditor upon Swan Lucas's share, and on the 31st March 1866 his report was confirmed.

It will be recollected that the whole of Swan Lucas's share of the real estate sold was not payable until the spring of 1864, and that the administrators settled no account of the personal estate until the 15th June 1864. From the report of the auditor, it appears that he had before him Swan Lucas's share both of the real and personal estate, for "he examined the evidence consisting of the inventory, sale lists, account, auditor's report of and upon the estate of Thomas Lucas, Sr., deceased, and that he heard the counsel on behalf of the several parties interested."

It appeared that Swan Lucas was indebted to his father in a sum which took the whole of his share of the personal estate, the whole of the first instalment, and part of the second, not due till 1st March 1863—which were applied to pay this debt. This left a balance of his share of the proceeds of the real estate, amounting to 662.30, which the auditor appropriated to pay judgments against Swan Lucas, entered after the death of his father, in 1861, and before the sale in the partition suit. There were liens on the interest or share of Swan Lucas in the real estate, and they were to be paid according to their priority. The administrators were simply the officers of the court to make the sale and receive the proceeds, of which they were simply the custodians and trustees—subject to the orders of the court, and with no power to pay any part of the fund to any one to whom it did not belong. The share of Swan Lucas belonged to his judgment-creditors, and neither he nor the administrators could divert it from them. The administrators, in violation of their duty, took a receipt from Swan Lucas on the 11th April 1862 for $428.30, on the ground that they were sureties for him. Swan Lucas could not make the appropriation, and they had no money in their hands to pay it, for the whole amount was appropriated to pay his debt to his father's estate.

There never was a clearer or a more just decision than the decree of the Orphans' Court in this case, who had full and exclusive jurisdiction in this matter. The powers and jurisdiction of the Orphans' Court over the estate of an intestate, and the interest of the heir in it, have been discussed, elucidated and pointed out by the present Chief Justice, in his very able opinion in Horner v. Hasbrouck, 5 Wright 169.

An objection to the power of the court is made by the appellants, that they did not appoint an auditor before the sale was confirmed, according to the 49th section of the Act of 29th March 1832, and that of course they had not any power either over the fund or to appoint an auditor. The section is, in its language, permissive, and conforms to a rule of practice which prevailed at that time in one or more of the Orphans' Courts, and particularly

[Lucas's Appeal.]

in Philadelphia, under the wise administration of Judge King. Its object was to protect "encumbrances upon the interests of heirs, in real estate, which being converted into money, by proceedings in partition, the security of the encumbrance becomes seriously impaired."

But whose duty was it to apply to the court for an auditor? Clearly that of the administrators, the officers of the court, who knew there were encumbrances on one share or purpart. Instead of that they had the sale confirmed on the very day it was reported to the court.

Ten days afterwards an auditor was appointed, and his report on Swan Lucas's share was excepted to, hung up and finally, after the payment of the whole purchase-money, referred to and acted upon by the auditor (Mr. Downey), and his report was confirmed by the court.

This decree is affirmed by us, and we hope that hereafter, in all cases coming within the provisions of the 49th section, the executor or administrator will apply to the court to appoint an auditor for the purposes specified in the section. Every prudent man, for his own sake, would certainly do so.

> Appeal dismissed at the costs of the appellants, and decree affirmed.