## HALL *v.* McALLASTER.

---

. TRUSTS AND TRUSTEES; AUDITOR'S REPORT.

1. The excess of the proceeds of the sale of lands of an intestate, above the amount paid therefor by one heir for its conveyance to him by other heirs, will, upon a petition by the trustees of the estate of the grantee, concerning the administration of his trust, be ordered paid to the grantors, notwithstanding the conveyance was absolute, and its consideration was the then estimated value of the lands, where one of the trustees alleges of his own knowledge, and the other on information and belief, that it was always the intention of the grantee to account to the grantors for their full share of the proceeds of the land, and this allegation is not only not denied, but is sustained by the contents of subsequent letters written them by him, and by documentary evidence tending to show that, upon selling a part of the land at a higher price than he paid, he remitted a share to them, and referred to the possibility of further remittances.

2. The report of an auditor of an account was ignored where it was based upon a question of law that should have been decided by the court before ordering the account to be stated. (Citing *Easter* v. *Ralston*, 32 App. D. C. 12.)

3. Where the report of an auditor is so made as to apply to either view of the law the court may take, there is no necessity for another reference merely because his conclusion was based on one view of the question.

No. 2527.    Submitted October 17, 1913.    Decided November 3, 1913.

HEARING on an appeal by the defendants from a decree of the Supreme Court of the District of Columbia overruling their exceptions to the report of the auditor with respect to the proceeds of the sale of lands belonging to a decedent's estate.

*Affirmed.*

The COURT in the opinion stated the facts as follows:

Joseph J. Darlington and John H. Clapp, trustees of the estate of John M. Clapp, deceased, filed their petition in the

cause pending in the equity court concerning the administration of said trust.

Petitioners allege that, in the lifetime of said John M. Clapp, the late Edwin E. Clapp departed this life, intestate, leaving a large amount of real estate situated chiefly in the State of Pennsylvania, and leaving the following heirs at law: John M. Clapp, a brother; Caroline C. McAllaster, a sister; Edward C. Shankland, Ralph M. Shankland, and Emeline F. McAllaster, children of a deceased sister; and Mary McLain, Charles J. McLain, and Ralph C. McLain, children of another deceased sister. The McLains live in the city of New York; the remaining heirs in California and Illinois. All of said heirs, except the McLains, conveyed their interests in the said estate to John M. Clapp, by deeds reciting a valuable consideration, dated, respectively, November 17, 1897, and March 7, 1899. The McLains remained the owners of the remaining one-fourth interest.

Petitioners are informed and believe, and do aver, that the consideration paid for said conveyances of title amounted to what was then the estimated value of two fourths of the said lands, "the estate of said Edwin E. Clapp being then in a somewhat embarrassed and complicated state, rendering it difficult to estimate its actual value. Subsequently, the said John M. Clapp succeeded in effecting sales of considerable parts of the said land, for one fourth of the proceeds of which sales he accounted to the McLain heirs, and, after reimbursing himself the amounts paid by him to the said Caroline C. McAllaster and the said Shankland heirs, he accounted to the said Caroline C. McAllaster in the sum of $30,000, and to the said Shankland heirs in the like sum of $30,000, as their shares of the proceeds of the said sales over and above what they had theretofore received from the said John M. Clapp for their conveyances to him as aforesaid; and thereafter, to wit, in the following year, he made the further distribution to the said Caroline C. McAllaster of $30,000, and of the like sum to the said Shankland heirs, taking from them, however, receipts for the said payments, which recited in substance that their

said conveyances to him had been 'at a price then sup-
posed to be fair and full proportion of their said estates
and claims,' that he had since disposed of a large portion of
the said property at a greater price than its former estimated
value; that he had voluntarily distributed among the heirs of
Edwin E. Clapp the profits thus realized on the shares of the
said grantors, which shares were received 'in full of our pro-
portion of said profits as hereinbefore recited,' or 'as our pro-
portion to date of said profits as above recited.' From the
year 1904 to the time of his death, the said John M. Clapp
continued, and from his death until her own decease Mrs. Anna
P. Clapp (who has been succeeded by petitioner John H.
Clapp) continued, to pay all taxes and charges upon the unsold
portions of said property, not only upon the three-fourths in-
terest therein legally vested in the said John M. Clapp at the
time of his decease, but upon the McLain interest, upon an
agreement or understanding upon the part of the latter that
such advances on their account should be reimbursed when the
remainder of the property was sold; and shortly before the
death of the said Anna P. Clapp, a large part of the remaining
portion of the said E. E. Clapp property was sold by herself and
the petitioner Joseph J. Darlington, as trustees of the John M.
Clapp estate, the McLain heirs joining in the conveyance, at
and for the price of $200,000, of which a little more than half,
to wit, the sum of $106,000, was received by the said Anna P.
Clapp and Joseph J. Darlington, trustees, and with which they
are chargeable. The petitioner John H. Clapp knows of his
personal knowledge, and the petitioner Joseph J. Darlington
is informed and believes, that it was always the purpose of the
said John M. Clapp to account to Caroline C. McAllaster and
the Shankland heirs for their full share of the proceeds of any
and all lands belonging to the E. E. Clapp estate, after reim-
bursing to himself or to his estate his advances for taxes or
other costs, which intention was also, as the petitioners are
informed, known to and is declared by Frances E. Hall and
Alice J. Clapp, the only remaining adult beneficiaries of the
will of the testator; and the said Caroline C. McAllaster and

the Shankland heirs, also, as petitioners are informed, believe, and aver, state that their conveyances were made to the said John M. Clapp upon his representation to them to that effect, and upon his assurance to them that they would receive the same benefit from the Edwin E. Clapp estate, when settled, as he himself or the McLain heirs should realize, notwithstanding their said conveyances to him for the purpose aforesaid."

Petitioners recite the following letters of John M. Clapp:

President, Pa.,
Feb. 2d, 1903.

Dear Sister Callie:—

I sent this morning to you a few pages from McClure's Magazine and the same mail bro't me your letter of Jan. 28th.

The property that was sold included all of the old President Furnace property and most of the surrounding lands that Edwin had purchased, but did not include nearly 3,000 acres that he had purchased in Forest county. The price was $325,-000, but this is for the present confidential.

They paid down $125,000 and the balance is to be in four payments in six, twelve, eighteen, and twenty-four months, with interest at 5 per cent.

All of the McLain family are well pleased with the sale, and express themselves as being very thankful to me.

I have a vexatious lawsuit growing out of the affair,—a claim for commission.

This may prevent my going to California this winter,—will inform you as soon as determined. The purchasers of the property were H. J. Crawford and T. B. Gregory, of Emlenton.

They bo't it for the oil, gas, timber, etc., and will operate it about as it has been heretofore operated. We reserve 15 acres (including the old homestead) at the mouth of Hemlock Creek, for use in connection with the timber, etc.

I am going to Washington to-morrow, and expect to go from

there to Marion county, Florida, and to return here in about two weeks.

Write to me here as heretofore.

As ever yours,

(Signed) J. M. C.

President, Pa., Oct. 9, 1903.

E. C. Shankland, C. E.

My dear Nephew:—

I have received enough money on sale of the estate of my brother Edwin E. Clapp, dec'd, to justify me in paying you and Ralph and Emma together $30,000 more than I first expected, and may hereafter be able to make you another remittance.

I do not know in what shape or way you would prefer to have it come,—whether as one check or draft, or to have three separate checks.

I will send it in whatever way you think will be best or easiest for you to arrange with Emma, so that her share can be kept invested, and not wasted.

Inclosed I send you a receipt for you all to sign. But it will not require your wives' nor Clinton's signature.

Please sign it at the right of where I have marked your initials.

Presume you will not have any difficulty in getting Emma's signature.

Most sincerely yours,

(Signed) J. M. Clapp.

The appellees, as heirs at law of Edwin E. Clapp to the extent of the two-fourths interest as aforesaid, and Frances C. Hall and Alice J. Clapp, the beneficiaries of the will of John M. Clapp, were made parties.

Edward C. Shankland, Ralph M. Shankland, and Emeline F. McAllaster answered as follows: "It is true, as therein alleged, that they conveyed to the late John M. Clapp their one-fourth interest in the real estate of which the late Edwin E.

Clapp died seised, for which interest the said John M. Clapp then paid them an amount which he then estimated, they do not doubt honestly and in good faith, to be the reasonable value thereof; upon which estimate these respondents relied in the matter, having no adequate knowledge or means of knowledge of their own as to the value of the said interest. The said John M. Clapp stated to them at the time, that the object of the said conveyance was to enable him to act promptly and to the best advantage in the administration of the estate of the said Edwin E. Clapp, of which estate he was administrator, and which estate, as they were and are informed, believe, and aver, was at that time in a somewhat embarrassed and complicated state; and that the said John M. Clapp then further advised them that, in the settlement of the estate, if its proceeds should turn out to be larger than was then estimated and anticipated by him, these respondents should share equally with himself, Caroline C. McAllaster, and the McLain heirs in the said proceeds, one fourth to each after reimbursing the said John M. Clapp the amount paid by him to these respondents at the time of said conveyance, and such advances as he might make from time to time on account of the said estate, pursuant to which promise the said John M. Clapp in his lifetime paid to these respondents, over and above the amount given them by him at the time of their said conveyance to him, a large sum of money, to wit, the sum of $60,000, as their additional share of the proceeds of the said estate up to the time of the last sale effected by him of lands belonging to the said estate. They believe themselves entitled to one fourth of the proceeds of any lands belonging to the said Edwin E. Clapp estate remaining unsold at the time of the decease of the said John M. Clapp, less their one-fourth share of any taxes or other charges advanced by him, or by his estate, for the Edwin E. Clapp estate, and they ask that the same may be awarded to them in this proceeding."

Caroline C. McAllaster filed a similar answer. Alice J. Clapp, one of the beneficiaries of the trust created by the will of John M. Clapp, admitted that the time had come when a

distribution of the trust estate created by said will was required to be made, and as to the lands of the estate of Edwin E. Clapp, she answered as follows:

"5. Upon her best knowledge and information, she believes it to be true that the conveyance by Mrs. Caroline C. McAllaster and by Edward C. Shankland, Ralph M. Shankland, and Emeline F. McAllaster to the said John M. Clapp, of their interest in the estate of Edwin E. Clapp, was made at the instance and request of the said John M. Clapp, and upon the representation by him that such a conveyance was sought in order to enable him the more readily to handle, manage, and dispose to advantage of the property comprising the said estate, and that it was in the contemplation of all the parties to the said conveyances, at the time of their execution, that, if the said E. E. Clapp estate should prove to be of greater value than was estimated by the said John M. Clapp at the time thereof, he would pay to his said grantors their full share of any excess of the said proceeds over and above the sum paid by him to them at the time of the said conveyances, pursuant to which understanding, upon her like best knowledge and information, she believes that the said John M. Clapp paid to Mrs. Caroline C. McAllaster and to the said Shankland heirs the sums set forth in the fifth paragraph of the petition, as such excess proceeds of the said estate up to the time of his death. Upon her said best knowledge, information, and belief, she consents that the proceeds of sales made since the death of the said John M. Clapp shall be distributed in accordance with the said understanding, after reimbursing the estate of John M. Clapp for advances made by him during his lifetime, and by his estate after his death, for taxes and other costs advanced for the said E. E. Clapp estate."

Frances C. Hall, answered as follows:

"The interest of your respondent in the estate of said John M. Clapp was left in trust for her, with remainder to her children living at the date of her death. That all of her children are now minors, and have guardians appointed by this court. That by the terms of the will of the said John M. Clapp, she is

deprived of the right to request this court to grant or refuse the prayer of said petition, and she therefore intrusts her interest in the matters alleged in said petition to the discretion of this court."

The infants referred to in the answer of Frances C. Hall, by their guardians *ad litem,* Shirley P. Austin and Henry E. Davis, answered to the effect that they can neither admit nor deny the allegations of the petitioners, and submit their interests to the protection of the court.

The cause was referred to the auditor to state the account. The auditor reported in favor of the claims of the said heirs of Edwin E. Clapp, and stated the account. His statement and schedules were such that, in any view taken by the court, no restatement would be necessary.

The trustees, one of whom, John H. Clapp, is a son of John M. Clapp, the testator, established the genuineness of the letters of John M. Clapp, heretofore recited. The conveyances by said heirs of Edwin E. Clapp to John M. Clapp were proved also. These deeds are in ordinary form, and contain no recital of the trust claimed therein.

The auditor's report was excepted to by Frances C. Hall, and on behalf of the infant defendants. Their exceptions having been overruled and the report confirmed, they have appealed from the decree.

*Mr. Henry E. Davis* for the appellants.

*Mr. William G. Johnson* for the appellees.

Mr. Chief Justice SHEPARD delivered the opinion of the court:

Had there been a denial of the trust by John M. Clapp while living, or by the trustees of his estate after his decease, the heirs of Edwin E. Clapp who conveyed their interests in the lands of his estate to John M. Clapp while administrator of Edwin E. Clapp's estate, claiming that their conveyances were in

trust for the sale and distribution among them of the net pro-ceeds of sales thereafter to be made, would have been compelled to file a bill to establish the trust.

While living, John M. Clapp made such distributions of the proceeds of such sales as were made by him, and his trustees, one of whom is his son, recognize the trust in their petition. The allegation of the petition is: "The petitioner John H. Clapp knows of his personal knowledge, and the petitioner Joseph J. Darlington is informed and believes, that it was always the purpose of the said John M. Clapp to account 'to the grantors' for their full share of the proceeds of any and all lands belonging to the said E. E. Clapp."

Actuated by this knowledge and belief, they asked authority to distribute the proceeds of sales of the remaining lands that had been made by them. The parties claiming the benefit of the trust were not therefore put to the necessity of filing a bill for relief, and answered with a brief but sufficient statement of their equitable rights. John H. Clapp, not only a trustee, but also a son, of John M. Clapp, expressly acknowledged those rights. Another child, Alice J. Clapp, admitted the rights in her answer. The remaining child, Frances C. Hall, made no denial of the allegations of the petition, but stated that, by reason of the interests of her infant children, Anna P. Hall and others named, she was deprived of the right to request the court to grant or refuse the prayer of the petition. The infant defendants, through their guardians, neither admitted nor denied the allegations of the petition, but submitted their interests to the determination of the court. At the time of the conveyances to him, John M. Clapp was the administrator of the estate of Edwin E. Clapp. By the law of administration prevailing in the State of Pennsylvania, where the estate was situated, lands, as well as personal property, are subject to administration and sale for the payment of debts. *Horner* v. *Hasbrouck,* 41 Pa. 169, 179; *Lucas's Appeal,* 53 Pa. 404, 407. The executor or administrator of an estate consisting of lands and personalty occupies a fiduciary relation to the parties entitled thereto, and a purchase by him of the same is voidable. *Beeson* v. *Beeson,* 9 Pa.

279. It is a rule of universal application that one under a fiduciary obligation may not enter into engagements that may possibly conflict with that obligation. *United States* v. *Carter*, 217 U. S. 286, 306, 54 L. ed. 769, 775, 30 Sup. Ct. Rep. 515, 19 Ann. Cas. 594, and cases cited.

It is unnecessary, however, to apply that principle in the present case, and it would be unjust to the memory of John M. Clapp to affirm the decree on that ground. The surrounding circumstances indicate that it was to the interest of all that the several interests in the lands of the estate should be placed in the hands of John M. Clapp for sale. The parties entitled to two fourths were numerous and lived in distant states. These made deeds to John M. Clapp, which enabled him to make sales and conveyances without delay.

The McLains, who owned the remaining fourth, lived near by, and they, without conveyances, intrusted their interest to him for sale, and ratified his sales by conveyances to the purchasers procured by him of the entire estate.

The consideration for the conveyances was the then estimated value of the interests of the grantors. That the conveyances were made under those conditions, and that John M. Clapp recognized his obligation to account for any additional amounts realized from sales by him, is shown by his letters, particularly that to his sister dated February 2, 1903. Had the conveyances not been made for the purposes and upon the trust indicated, it is reasonable to infer that no inquiry would have been made of him regarding his subsequent sales. That he recognized the equitable rights of the parties is shown by the full report made by him of the sales that had been made, and by the remittance to the several grantors of their proportions of the purchase money in excess of the amount originally paid them.

We attach no importance to the report of the auditor, as it was based upon a question of law that should have been determined by the court before ordering the account to be stated. *Easter* v. *Ralston*, 32 App. D. C. 12, 18. The account of the auditor having been made so as to apply to either view that the court might take of the law of the case, there was no necessity

for another reference The decree of the court is right and is therefore affirmed with costs.                          *Affirmed.*